## Walker vs. Devereaux and others.

The act to incorporate the Utica and Schenectady Rail Road Company did not create a corporation, *eo instanti* it became a law; it only constituted such persons as should become stockholders, in the manner prescribed in the act, a body corporate. And, in the event of an excess of subscriptions to the stock, there could be neither stockholders nor a corporation until the commissioners had apportioned the stock among the subscribers.

The commissioners did not hold the stock, previous to its distribution, in the character of agents or trustees of the corporation; but in receiving subscriptions, and in apportioning the stock, they acted as the officers or agents of the state. And if they had neglected to open books for subscriptions, or had not proceeded to apportion the stock as directed by the act, the supreme court, by a mandamus, might have compelled them to discharge those duties.

Upon the apportionment of stock among the subscribers to a joint stock corporation, if any part of the stock is apportioned to a subscriber who is not entitled to the same, and under circumstances which amount to a fraud, the apportionment is not absolutely void; but such subscriber will, in equity, be deemed to hold the stock in trust, or for the benefit of some or all of the other subscribers who did not receive stock to the extent of their subscriptions.

A subscriber to a joint stock corporation, who complains of an inequitable distribution of the stock, and who is seeking to reach stock which has been improperly assigned or apportioned to others, should file his bill in behalf of himself and of all other subscribers standing in the same situation.

After the distribution of the stock, the commissioners of apportionment are not the trustees of, and do not represent the interests of other persons to whom stock has been distributed. It seems the stockholders themselves, so far as they are known, should be parties, to a suit which is to affect their rights, previous to the organization of the company by the election of directors.

Whether the first election of directors can be held on any other day than that originally appointed by the commissioners? Quære.

If a complainant wishes to obtain a preliminary injunction, to stay the proceedings of the defendant during the pendency of the suit, he should insert a formal prayer for such process in his bill.

It seems, that a subscriber for stock who voluntarily receives back his deposit from the commissioners of apportionment, thereby waives his right to question the correctness of the distribution among the subscribers for such stock.

Where the commissioners of apportionment of a joint stock corporation are authorized, in case of an excess of subscriptions to the stock, to apportion the same among the subscribers, in such manner as the commissioners shall deem most advantageous to the interests of the corporation, it is not necessary that they should give to each subscriber a part of the stock; but the whole may be apportioned to a part of the subscribers, to the exclusion

of the others, if a majority of the commissioners deem such a distribution of the stock to be most advantageous to the corporation.

When a distribution or apportionment is to be made between or among a number of persons, or a class of individuals, and no discretion is vested in those who are to execute the power of making the distribution, each individual of the whole number, or class of persons named, is entitled to an equal share.

But where the designation of a class, or number of persons, is merely for the purpose of pointing out those from whom the selection is to be made, and the person entrusted with the power of distribution is vested with a discretionary right of distributing among the individuals of that class of persons as he shall think proper, he may allot the whole fund or property to one or more of the class, to the exclusion of the others.

Where a discretion is to be exercised according to fixed and legal principles, by a body acting as a court, if those principles have been mistaken, or violated, it is a proper case for review and correction by the appropriate tribunal. But if the legislature has entrusted the exercise of a discretionary power to the sole judgment and discretion of a particular person, or body of men, no court is authorized to interfere with or control that discretion, provided it is exercised in good faith.

By the settled practice in this state, commissioners appointed in an act of incorporation of a joint stock company, to receive subscriptions and to apportion the stock in case of an excess of subscriptions, may themselves become subscribers, and may apportion a part of the stock to themselves.

Where the commissioners are directed to distribute the stock of a corporation, among the subscribers thereto, in such manner as they shall deem most beneficial to the interests of the corporation, it is a fraud upon the commissioners, and upon the law, for a person to subscribe for stock in his own name, under a secret agreement to hold it in trust for another if stock should be apportioned to him under such subscription, with the intention of deceiving and misleading the commissioners in the distribution of the stock of the company.

Such a trust being illegal and void, the stock apportioned to the nominal subscriber would, as between the parties to the fraudulent subscription, be absolutely vested in him ; and to reach it by a suit in chancery, for the benefit of other bona fide subcribers, the bill must be filed against the subscriber, in whose name it stands.

August 20. THIS was an application for an injunction, to restrain the defendants from proceeding to hold an election for directors of the Utica and Schenectady Rail Road Company ; and also to restrain them from disposing of such of the stock in the company as had been apportioned to themselves, or in which they had or might become interested by the apportionment thereof to other persons. The complainant's bill, after setting forth the substance of the five first sections of the act authorizing the incorporation of the rail road company, (*Laws of* 1833, *p.* 462,)

1833.

Walker
v.
Devereaux.

stated, in substance, that the commissioners attended at the times and places specified in the act, and received subscriptions to the stock; that the commissioners, as well as others, became subscribers, and that an amount was subscribed far exceeding the capital stock; that some of the commissioners were interested in stock subscribed by or in the name of other persons, under an agreement or understanding that it should be held for the benefit of the commissioner or commissioners interested in it; and that the relatives and friends of some of the commissioners also subscribed for stock in the names of others; that the commissioners had distributed the stock in an arbitrary, unjust and unequal manner, principally among their friends, relations and favorites, or the relatives, friends and favorites of some of them; and particularly to those persons in whose subscriptions some of the commissioners, or their relatives and friends, were interested; that the commissioners had appportioned the stock without reference to the rights which the complainant and others had acquired by their subscriptions, and the ability of the subscribers to pay for the stock apportioned to them; that the commissioners had also apportioned 100 shares of the stock to each of themselves, to the entire exclusion of the complainant and a great number of the other subscribers; and that before making a distribution of the stock among the subscribers, the commissioners set apart a fund to be distributed to state officers, for the reason that they were such, and a fund for certain editors of public newspapers, whom it was thought advisable to conciliate. The bill further stated, that the commissioners had given notice for an election of directors, and had delivered to the subscribers, to whom stock had been apportioned, the evidences of their right to the same; that the complainant was a subscriber for 35 shares of the stock, and paid to the commissioners five dollars on each share at the time of subscribing. The complainant therefore insisted, among other things, that the commissioners were trustees for the subscribers, and could not receive any part of the stock themselves; that the assignment, by the commissioners, of stock to those who had subscribed for others, was fraudulent as against the complainant and other subscribers; and that each real subscriber was enti-

tled to have some portion of the stock assigned to him by the commissioners; and he prayed that the defendants might be restrained by injunction from holding the election of directors, and from disposing of the stock held by them and by others in trust for them; that there might be a re-distribution of the stock of the company, at such time and in such manner as the court might think proper to direct; and for general relief. The bill contained a prayer for process of subpœna, but no special prayer for a preliminary injunction. In the original bill, the complainant, through inadvertence, had sworn that most of the material facts were true of his own knowledge; but upon application to the court, and with the consent of the defendants' counsel, the bill was amended so as to charge the several matters as upon the information and belief of the complainant only. Notice of the application for an injunction having been given to the defendants, they appeared, by their counsel, to resist the motion. An affidavit of the chairman of the commissioners was put in, from which it appeared that there were 2909 subscribers for the stock; that more than seven times the amount of the capital was subscribed; and that the whole capital stock was distributed to 1423 of the persons who were subscribers thereto. It appeared, also, by the affidavit of a clerk of the Branch Bank of the United States, at Utica, that after the distribution of the stock, a notice was given to those subscribers who had not received any stock in the apportionment, or who had not received stock to the amount of their subscriptions, to call at the bank and receive back their money; and that the complainant applied for and received back the amount paid by him on subscribing, and gave a receipt for the same. Another affidavit was put in, made by a person not a party to the suit, stating that since the apportionment, he had purchased from those to whom it had been distributed, a large amount of stock, for which he had paid an advance, or premium, without any notice of fraud or irregularity in the apportionment; and that many other persons had made similar purchases.

*B. F. Cooper & S. Stevens,* for the complainant. The defendants were clothed with a fiduciary character, and became

1833.

Walker
v.
Devereaux.

trustees for the Utica and Schenectady Rail Road Company. They were vested with a franchise which they were required to dispose of to the subscribers for the stock. Had duties of a like nature been conferred on them in a deed or will, they would have been trustees for the grantee or devisee. They had a more ample authority than a simple naked power. (1 *Cruise's Dig*. 328, *sec.* 19, *p.* 306 *to* 309.) The trust character of the defendants was analogous to that of trustees to support contingent remainders. If the charge which devolved upon the defendants resembled a power more than a trust, it was a power which they were required to execute, and which the court of chancery could and would have compelled them to execute. (*Higgs* v. *Brown*, 18 *Vesey, jun.* 570. *Id.* 192.) After an amount exceeding the capital stock had been subscribed, the defendants then, if not before, became charged with a judicial trust. (*Meads* v. *Walker*, 1 *Hopk.* 587. 2 *Hall's Sup. Court Rep.* 554.) By the apportionment of stock to themselves, the defendants assumed to traffic in the subject matter of their trust, and became the trustees of those subscribers who were excluded, or who received only an inadequate share of the stock, and dissented from the apportionment. (5 *Vesey*, 678. 8 *Id.* 348. 16 *Id.* 393. , *Sugden's Vendors*, 589. 1 *Paige's Ch. Rep.* 145, 152, 153.)

The defendants, if not trustees, were at least agents. And neither trustees nor agents can traffic in or derive a profit from the subject matter of their trust. (1 *Hovenden on Frauds*, 167, 147, 480, 1, 3. 1 *Jac. & Walk.* 222. 8 *Cowen*, 361. *Sugden's Vendors*, 589, 596.) And if the defendants have purchased stock and now hold the same, they hold it only in trust for the subscribers. (1 *Sch. & Lef.* 379. 5 *Vesey*, 678, 794. 8 *Cowen*, 328, 361. 2 *Rose's Rep.* 349. 1 *Merivale*, 175. 1 *Hovenden on Frauds*, 472, 480, 1.) The defendants could not subscribe for stock in the names of other persons, as their agents; nor could they apportion stock, to the exclusion of others, to persons who had agreed to assign such stock to them, or to furnish them with their proxies to vote at the election of directors. (4 *Cowen*, 717. 9 *Vesey*, 241. 10 *Id.* 381. 2 *John. Ch. Rep.* 252. 1 *Hov.* 593. 5 *Mad. Rep.*

441.) The defendants are not public officers, not having authority to perform a class of acts affecting the public, but merely a single act. (4 *Jacob's Law Dic.* 433. 2 *Atk.* 400, 406. 5 *Vesey,* 722. *Hov.* 145, 6, 7. 4 *Wheaton,* 668, 694.) Besides, the corporation is a private corporation; and the stock is declared to be personal property. Even if the defendants are public agents, yet, as far as their functions affect private rights, they are quoad hoc private agents or trustees, and as such are liable to the claims of their cestui que trusts.

The defendants apportioned to themselves an inordinate amount of stock, and chancery will relieve against this part of the apportionment. (*Hopk.* 591, 593. 14 *John. Rep.* 513. 2 *Vesey, sen.* 155, 6. 13 *Ves.* 51. 8 *Cowen,* 361.) And they exceeded their authority, in excluding any subscriber from a participation in the stock. (*Sugden on Powers,* 481, 501. 6 *Mumford,* 352, 374. 2 *Call,* 520.) They were required by the act to apportion the stock among the subscribers. By this was meant that each subscriber was to have his just proportion of the stock. (*People* v. *Sup. Court of N. York,* 5 *Wendell,* 114. 10 *Id.* 285.) The discretion of officers and subordinate tribunals, affecting private rights, is a sound legal discretion, to be exercised in accordance with fixed principles and rules; it is not an arbitrary *sic volo*. And if so exercised, their decision will be reviewed and corrected. (1 *Hov.* 486, 487, 493. 3 *Mad. Rep.* 254. 20 *John. Rep.* 430. 8 *Wendell,* 47, 64.) The court will presume, as the defendants have not shown the contrary, that such a distribution of the stock as most accorded with justice and equality was most advantageous to the interests of the corporation. It was incumbent upon the defendants to have shown that they did apportion the stock in such manner as the majority deemed most advantageous to the interests of the corporation. The defendants were not clothed with an undefined and unlimited discretion.

As the complainant has a right to some portion of the stock, and as this right has been withheld, a new apportionment must be made. Where a fund is directed to be distributed among several persons, in such proportions as the trustees may think proper, in equity each person is entitled to a substantial

share; and a distribution allotting a nominal sum to one or more of the objects of the trust is illusory and void, and will be set aside in chancery. (*Sugden on Powers,* 481, 488, 500.) If there had been more subscribers than shares, one share might have been apportioned to two or more subscribers; who might vote by the direction of chancery alternately on the stock, in like manner as chancery can give a widow for her dower the alternate use of the property out of which she is dowable; such as the third toll dish of a mill. (1 *Cowen's Rep.* 476, 7.) But if there should be deemed to be an absolute necessity of excluding some subscribers from an apportionment of the stock, the order in which the subscriptions were made would afford an opportunity of applying the rule, that where equities are equal, the prior equity prevails; or the rule, that where the legal title has passed to any one, the equities being equal, the legal title prevails.

From the language as well as the spirit of the act of incorporation, it is evident that the legislature intended an apportionment among all the subscribers, upon the footing of equality. (1 *Vesey,* 281. 2 *Id.* 240. 7 *Mass. Rep.* 523.) The spirit of our institutions is opposed to the possession by any individual or body of individuals of an undefined and unlimited discretion in matters affecting the public. Until the case of *Meads* v. *Walker,* the question of an excess of authority, or as to the right to exclude any subscriber from a participation in the stock, had not arisen; and in that case a re-distribution was ordered. The conclusions which we draw in this case are, that the commissioners were statutory agents, with defined and limited powers; that, as they exceeded their authority, their apportionment is void, whether their authority was coupled with a trust, or was simply a naked power; and that no right accrued, under their apportionment, to any of the subscribers. (8 *Cowen,* 543.) A mandamus is not the appropriate remedy for a case like the present. The bill charges that the defendants apportioned stock to those in whose subscriptions some of them were interested, or who had agreed to assign their stock to them, or to give them their proxies to vote at the election of directors. This charge, we insist, amounts to a charge of fraud, and we are therefore en-

titled to a discovery from the defendants. (1 *Hovenden,* 146, 481. 1 *Jacob & Walker,* 222. 1 *Merivale,* 176. 2 *Rose's Rep.* 349. 12 *Vesey's Rep.* 373.) The defendants were guilty of fraud in apportioning stock to their favorites in undue proportions ; and especially in apportioning stock to those in whose subscriptions they knew their relations or friends were interested. (5 *Mad. Rep.* 441. 1 *Hov.* 493.) The bill also charges, upon information and belief, that the defendants set apart a fund for state officers, for the reason that they were such ; and also for certain editors of newspapers. This, we contend, is altogether indefensible and vitiates the distribution. But it is said that no fraud is alleged in the bill. We answer that fraud is to be inferred from the facts we have alleged. A pleader may set out the facts or the legal effect of such facts. (1 *T. R.* 159. *Cooper's Pl.* 5. 3 *Paige,* 554, 564. 2 *Har. & John.* 292. 7 *Cowen,* 301.) The remedy to be applied in this case is a re-distribution of the stock by a decree of the court. The withdrawal by the complainant of his subscription money did not take away his right to relief. It was not necessary that all the defendants should have actually perpetrated the fraud. They all ratified and sanctioned the apportionment. The fraud of one was, in law, the fraud of all, and is sufficient to authorize the setting aside the entire distribution ; and the bill charges that the defendants, or some or one of them, were interested in stock subscribed for in borrowed names. (2 *Atk.* 200, 6. 3 *P. Wms.* 215. 1 *Mad. Ch. R.* 8.) As yet there is no stock—merely a bare right to stock, acquired by subscription. The persons to whom stock has been apportioned have only a colorable right to the same. There can, therefore, be no rights of bona fide purchasers, in the way of a re-distribution. The purchasers of the stock are purchasers with notice, and are not entitled to protection. (8 *Wheaton,* 42. 1 *Mason,* 341. 1 *Gall.* 41. 1 *Rev. Stat.* 601.) The interest they acquired was subject to all prior equities ; and they cannot be injured, as their money will be refunded, and they will have an action for damages against the vendors. (4 *Cowen,* 717. 3 *Paige,* 350.) The court has the power to remove the defendants as commissioners and appoint others in their place. (5 *Vesey,* 722.) An injunction, staying the election, would not dissolve the corporation. (1 *R. S.* 600,

604. *Sutliff* v. *Forgey*, 1 *Cowen*, 89.) The complainant, in instituting this suit, has acted from the best motives—from a desire of sustaining the doctrine of equal rights, for which our fathers perilled their lives. Facts charged upon information and belief are sufficient to authorize an injunction, at least where the application is founded upon notice. The legislature could not have intended that the commissioners should have the power of deciding whether it was most advantageous to the interests of the corporation that they should hold the stock in preference to others. Even if the election of directors, if held, would be void, yet the court will enjoin the defendants from holding it, as it might be an annoyance to the complainant. (1 *John. Ch. Rep.* 517.) But we will sustain an injury if the election proceeds, as we are entitled to have a voice in the election of directors; and the first directors may appoint agents whose acts will bind us. Legislative silence is not a legislative exposition in favor of the right of the commissioners to apportion stock to themselves. The policy of the act and of the government is opposed to such right. Admitting the apportionment is not void in toto, the stock in the hands of the commissioners remains unapportioned, and they can be compelled to distribute the same among the excluded subscribers. If the apportionment is void, we have a right to tender to the commissioners the money withdrawn from them, and to demand the stock to which we are entitled.

*B. F. Butler* & *G. C. Bronson,* for the defendants. The only fact, contained in the complainant's bill, which he verifies under oath as of his own knowledge, is the simple fact of his subscription to stock. Every other fact in the bill he states upon information alone. He does not pretend to furnish us with even the names of his informants. And the allegation is not that all the defendants, as commissioners, have committed the acts charged, but that all, or some, or one of them have committed such acts. The complainant's information may have been confined to one of the commissioners only, and it may have proceeded from a source not entitled to credit. The object of the present motion is to restrain the election of directors of the Utica and Schenectady Rail Road Company—the

result of which, if successful, will delay the prosecution of a highly important public improvement for an entire season. Does such an object speak much in favor of the patriotism and public spirit, either of those who commenced, or of those who now sanction and advise the prosecution of this proceeding? This is not a proper case for an injunction. An injunction can only be granted to prevent irreparable mischief. (*Corporation of New-York* v. *Mapes,* 6 *John. Ch. R.* 46. *Ogden* v. *Kip,* 6 *Id.* 160. *Jerome* v. *Ross,* 7 *Id.* 316.) Here irreparable mischief will be produced by granting the injunction. In the cases of the *Corporation of New-York* v. *Mapes* and *Ogden* v. *Kip,* the motion for an injunction was founded upon the bill only; and in each case the charges in the bill were positively sworn to. An injunction is never granted, except in a clear case of jurisdiction and of irreparable mischief. This is not a case within the jurisdiction of chancery; for the bill does not ask for a discovery in aid of a proceeding at law, as was the case in *Meads* v. *Walker.* The complainant disclaims all recourse to a court of law; and this is not a case of peculiar equity jurisdiction. The bill is not filed by all the excluded stockholders, nor by one in behalf of himself and all others in a like situation. The complainant's remedy, if any, is at law. He can apply to the supreme court for a mandamus; or may bring a certiorari; or he may sue the commissioners for damages. All proceedings of inferior bodies may be corrected by mandamus or certiorari. (*Mooers* v. *Smedley,* 6 *John. Ch. R.* 28. *Corporation of New-York* v. *Mapes,* 6 *Id.* 46. *Jerome* v. *Ross,* 7 *Id.* 316. *President, &c. of Brooklyn* v. *Patchen,* 8 *Wendell,* 64.) In the case of *Meads* v. *Walker,* specific charges of fraud were alleged in the bill. Here the bill neither charges or shows fraud. An injunction will not be granted, unless it is indispensable to protect the rights of the complainant. He only claims his rateable proportion of thirty-five shares. Can an injunction be necessary for this? Postpone the commencement of an immensely valuable improvement until another year; cause the amount paid in ($100,000) to lay idle; and all this on account of 5 shares of stock, which is about the complainant's rateable proportion? Cannot 35 shares of stock be hypothecated for the complainant's benefit

in case he ultimately succeeds ? Thirty-five shares would be the very extent of a decree in his favor. In the case of *Meads* v. *Walker*, which afterwards came before Chancellor Jones, the whole question of trust was disposed of. Chancellor Sanford, in that case, did not decide that the commissioners had no right to apportion stock to themselves ; only that they could not take to themselves an inordinate amount. It appeared, in that case, that stock had in some instances been assigned indirectly to some of the commissioners. When the case afterwards came up before Chancellor Jones, he reversed every part of Chancellor Sanford's decision, which he did not consider as res adjudicata ; and he held that the decision of his predecessor, upon an interlocutory motion, was not res adjudicata. One point decided in that case was, that the commissioners were entitled to some stock. That case shows that no injunction should be granted here. It at least settles the principle that no injunction will be granted in any case where the complainant's rights can be secured without it. Chancellor Jones' decree, in the case of *Meads* v. *Walker*, was made the 17th May, 1826, and will be found in the register's office at Albany. This case differs from that in the withdrawal of the subscription money. Here the complainant withdrew it voluntarily. In *Meads* v. *Walker*, the money was returned by the commissioners, without the complainant's request ; and the complainant, in his bill, also offered to bring the money into court. Here the complainant went to the commissioners and asked them for his money, and received it. Such a withdrawal by the present complainant amounted to a complete waiver of any right to question the distribution of the stock. (1 *Fonb.* 291, 2. 1 *Mad. Chan.* 407, 8.) In *Meads* v. *Walker*, the complainant also made a formal demand of his stock, from the commissioners, before filing his bill. That was not done here. Upon this bill an entire re-distribution cannot be ordered, for want of the necessary parties. All the subscribers, both those who received and those who did not receive stock, should be before the court. But the bill makes out no case, either for equity or law. The legislature possessed the right of framing this charter as they thought proper ; and we must look into the charter for the powers of the commissioners, and

not to adjudged cases. The charter authorizes the commis‚
sioners to apportion the stock among the subscribers in such
manner as a majority of them shall deem most advantageous
to the interests of the corporation. The discretion here is
even broader than it was in the case of the Catskill Bank ;
(*Haight* v. *Day*, 1 *John. Ch.* 18 ;) in which case the distribution
was sustained by Chancellor Kent, although the commission-
ers took to themselves, and a few friends, the whole of the
stock, consisting of 6000 shares, except 128 shares, and
each commissioner took to himself one sixth of the entire
stock. In the present case, the commissioners were required
by the charter to consult the interests of the corporation alone
in the apportionment of the stock. Even the interests of the
public, if they came in collision with the interests of the cor-
poration, the defendants were directed to disregard. And as
to what distribution would most advance the interests of the
corporation, a majority of the commissioners were appointed
the sole and final judges. The fraud of one of their number
could not possibly be deemed the fraud of all, or vitiate the
entire distribution. (*Roberts* v. *Anderson*, 2 *John. Ch. R.* 202.
*Ward* v. *Van Bokkelen*, 2 *Paige*, 289.) As an injunction will
not be dissolved upon an answer verified upon information
and belief alone, (*Champlin* v. *Corporation of New-York*, 3
*Paige*, 573,) so an injunction will not be granted upon a bill
sworn to in that manner. (*M'Elwain* v. *Willis*, 9 *Wendell*,
561.) The defendants possessed a broad and undefined dis-
cretion under the present charter. It was settled in *Haight* v.
*Day*, (1 *John. Ch. R.* 18,) and in the case of *Clarke* v. *Brook-
lyn Bank*, (1 *Edwards*, 361,) that commissioners appointed to
distribute stock have a right to apportion a part of the stock to
themselves. As early as 1804, the struggle commenced to ob-
tain bank stock. The first directors were in some instances
named in the act of incorporation, and were appointed to ap-
portion the stock ; and to be eligible to the office of director, it
was made necessary that the director should be a stockholder.
Afterwards the practice obtained of appointing an interme-
diate body to apportion the stock. In some cases a restrict-
ed, and in others a rateable distribution was adopted. In

*Haight* v. *Day*, (1 *John. Ch. Rep.* 18,) Chancellor Kent decided that the distribution could only be set aside for fraud, and that it was not necessary to give to each subscriber a share. Notwithstanding this decision, the legislature continued granting charters which conferred upon the commissioners appointed to distribute the stock undefined and discretionary powers. Wherever a discretion is vested in an individual or a body of individuals, no court can interfere except in a case of fraud. The legislature must have supposed that preferences in the distribution in this case would have been given. Where this discretion is given, if the commissioners take to themselves the whole stock, the distribution could not be disturbed. In 1829 eleven new banks were incorporated. The charters of all of them permitted the commissioners to take to themselves a part of the stock. The same permission has been given in every bank charter passed since that year. It was contained also in the act incorporating the New-York Life Insurance and Trust Company. The capital of most of the banks which were chartered in 1833 was $200,000, and every charter allowed each of the commissioners to take $2500. All the acts creating these banks are to be construed in pari materia with the act incorporating the Utica and Schenectady Rail Road Company ; and they clearly show that the legislature intended that the defendants might, if they thought proper, apportion to themselves a part of the stock, and that they did not deem it opposed to sound morals for them so to do.

The legislature have generally conceived it proper to give a preference to those who have bona fide interested themselves in the application for an incorporation. In some instances the commissioners have been permitted to take each to himself as much as one twentieth of the stock ; and the lowest amount to which they have been restricted is one eightieth. In this case the commissioners were extremely moderate, having taken to themselves only one two hundreths of the capital. In the case of the Catskill Bank the commissioners each took one sixth of the capital. It is not charged in the bill that the commissioners have taken stock indirectly ; although even this was decided, in *Meads* v. *Walker*, not to

constitute fraud per se. All the charges in the bill are founded upon mere hearsay; and no where is it alleged that the distribution was not advantageous to the interests of the corporation. No injunction can be granted unless the whole apportionment was void. But the matter in dispute is not of sufficient value to give the court jurisdiction. The utmost the complainant would have been entitled to upon a rateable distribution was four shares. The value is the premium the stock now brings in market, which is 8 per cent. (2 *R. S.* 173, § 37.) And there is no offer in the bill to restore the subscription money voluntarily withdrawn from the commissioners. The facts charged in the bill should have been sworn to positively. Or at least the names of the complainant's informants should have been given, and the means and sources of his information should have been stated. If the complainant had done this, it might have appeared that he had given too ready a credence to false rumors. To grant an injunction staying the election of directors, will result in a destruction of the corporation. If the election fails, the corporation will become dormant, and could not be resuscitated, except by the action of the legislature. After the distribution of the stock, and the appointment of the day for the election of directors, the office of the commissioners ceased, and their power was spent. In two years $100,000 must be expended, or the corporation, by the terms of the act, will cease. Suspend its operations by injunction, let the time elapse, and you destroy the corporation. The commissioners were appointed by the legislature. They cannot be removed by this court; nor can their proceedings be set aside, except for the single cause of fraud and corruption. Several modes of apportionment of stock have been adopted by the legislature. The one is a pro rata distribution; another a restricted distribution; that is, a distribution in the discretion of the commissioners, under certain restrictions. A third is a distribution resting solely in the discretion of the commissioners, without limitation or restriction. The last is the mode of distribution adopted in the present act. The counsel for the complainant have referred us to the old era, when the doctrine of equal rights was revered. We will make the same reference, and call their attention to the character of the

1833.

Walker
v.
Devereaux.

distribution of stocks during that era. During the era referred to, the charter and stock was, in effect, given to the applicants, to the exclusion of all others, unless in their election. In most, if not all the cases, the corporation was created and the directors appointed by the act—books to be opened under the direction of the directors, until the stock was subscribed. And in very many instances the gentlemen appointed by the legislature to distribute the stock, took the whole to themselves. The Catskill Bank was incorporated during the old era. There each commissioner took one sixth of the entire stock to himself. The counsel now seek to apply new principles to the apportionment of stocks, and in their zeal contend that the spirit of our free institutions will be outraged by a discretionary distribution, which permits any other than an equal distribution among all the subscribers, without any regard to their being men of character and responsibility, or to their being friendly or hostile to the corporation. The argument of the counsel for the complainant would more properly have been directed against the passage of the bill which conferred the power upon the defendants now objected to. The act incorporating the Utica and Schenectady Rail Road Company confers upon the defendants the sole power of judging as to the expediency of giving or refusing stock to certain of the subscribers. This power they have exercised, and the court cannot deprive them of it. Neither the court nor a master can judiciously determine what distribution would most advance the interests of this company. A discretion like that given to the defendants cannot be regulated by mathematical rules, and no court can interfere to control its exercise. If the commissioners took an inordinate amount of stock to themselves, it would be an excess of power, not fraud. If a rateable distribution had been intended by the legislature, it would have been provided for in the charter, as was the case in the acts incorporating the Broome County and Chautauque County Banks. Besides, if the number of subscribers had exceeded the number of shares, a share could not have been apportioned to each subscriber; and no provision is made for such a contingency. If the

complainant had neither a legal or equitable right to any part of the stock, he had no right to file this bill. His being excluded is evidence that the commissioners did not deem it advantageous to the interests of the company to apportion him any stock. Their decision having been against him, he stands without any right to question the distribution. The bill does not charge that the apportionment was collusively and corruptly made. Subscribing for stock in the names of other persons is not fraudulent. What a man may do directly, he may do indirectly, provided in the aggregate he does not obtain an amount of stock inordinate, in reference to the whole capital. The bill does not charge that any one commissioner took stock indirectly, and concealed the fact from his colleagues. The defendants had a right to give the stock to their friends, in preference to their enemies. Nor was it fraudulent to give it to such friends indirectly, provided they did not thus obtain an inordinate amount. The charge of setting apart a fund for state officers, without apportioning the same, is denied by Townsend's affidavit. There is no charge in the bill that the commissioners did not apportion the stock in such manner as they deemed most advantageous to the interests of the corporation. This allegation was indispensable to sustain the bill. Nor does the bill allege that the defendants have not adjudicated upon the complainant's right to stock. If they have, although they may have misjudged, their decision is final, as the legislature has given no appeal. This case is to be decided upon the charter, not upon what some may deem ought to have been the charter. But a fatal objection to this application, and to granting any relief upon this bill, is that the proper parties are not before the court. The complainant has not, in his bill, given even the name of one fictitious subscriber. An injunction is not necessary to secure to the complainant his four shares. He is already abundantly secured by the lis pendens, which prevents the defendants from parting with their stock. The complainant asks the court to repeal the charter.

THE CHANCELLOR. The act under which the commissioners opened books of subscription for the capital stock of the Utica and Schenectady Rail Road Company, did not create a corporation, *eo instanti*, when that act took effect as a law. It only constituted such persons a body corporate as should thereafter become stockholders, in the manner prescribed in the act. If the whole corporate stock, and no more, had been subscribed, within the three days during which the commissioners were bound to keep the books open, then those persons who had thus subscribed, and paid their money to the commissioners, would have acquired legal rights as corporators. And they would also have had the right to call upon the commissioners, not as their agents or trustees, but as agents or officers of the public, to notify an election of directors, and to preside as inspectors thereof, by a committee of their body, as directed by the act. But in the event which has happened, of an excess of subscription, no person can be a stockholder of the corporation, neither does any corporation exist, nor has any person any interest in the stock, as the legal owner thereof, so as to authorize him to vote upon it, or to transfer it as stock, until a majority of the commissioners have proceeded to apportion the same, and to designate the persons who are to be the stockholders, and the amount which each is to receive. It is evident, therefore, if the counsel for the complainant are right in supposing that the distribution in this case was absolutely void, and not merely voidable, that the election of directors, which they now seek to restrain by injunction, cannot possibly affect the rights of their client. As there could be neither a corporation nor stockholders in existence, until after the stock was apportioned, the commissioners did not hold the stock, nor did they act, in the character of officers, servants, agents or trustees of the corporation or of the subscribers. But they acted merely as officers or agents of the government, appointed by the legislature to assist in the organization of a corporation and to create a stock in the same. The legislature might by law have designated the stockholders, as they had done in the case of other corporations, or they might have delegated that portion of their authority to others. But as they did not delegate that power to the

courts, neither this or any other court has the power to create a corporation, by designating who shall be the persons to hold *stock* in the same. The appropriate tribunal, however, upon a proper application, may compel the commissioners to open books, to apportion the stock in the manner prescribed by law, and to notify and by a committee of their body preside at the election of the directors. Such tribunal may also decide as to the proper construction of the act of incorporation, and can enforce a compliance with such decision. If the apportionment of the stock in this case was absolutely void, as the complainant insists it was, he has mistaken his remedy. He should in that case have applied to the supreme court for a mandamus, to compel these public officers, or agents of the legislature, to distribute the stock, as required by the statute. And if it was necessary to apply to this court, either for a discovery or an injunction, in aid of, or as ancillary to his remedy at law, he should have stated in his bill either that he had applied, or that he intended to apply to the legal tribunal for relief. (*Jones* v. *Jones, 3 Meriv. Rep.* 173.)

I apprehend, however, the complainant is under a mistake in supposing that the apportionment of stock in this case was absolutely void. It was at the most voidable, even upon the principles upon which the complainant supposes it was absolutely void. And if any portion of the stock has been apportioned to persons who ought not to hold it, or if any one has received more than his share, under circumstances which would amount to a fraud upon the commissioners, or upon the law, such persons must be deemed to hold it for the benefit of all or some of the subscribers who have received no stock, or who have not received stock to the extent of their subscriptions. Here, however, another difficulty presents itself upon the face of the complainant's bill. He shows that from one third to one half of all the subscribers, and who had as much right to a portion of the stock as himself, were excluded from any participation in the same, by the apportionment of the commissioners. And it can hardly be presumed that even those to whom stock was assigned, obtained the full amount of their subscriptions. The complainant has shown by his bill that all these had relinquished their rights, or he should have filed

1833.

Walker
v.
Devereaux.

his bill in behalf of himself and of all others who might choose to come in under the decree. (*Baldwin* v. *Lawrence*, 2 *Sim. & Stu.* 18. *Egberts* v. *Wood*, 3 *Paige's Rep.* 520.) Again ; the complainant seeks an injunction which must necessarily affect the interest of every bona fide stockholder to whom stock has been assigned, or who has purchased in good faith since the distribution. And I am not prepared to say, if this election is not held, that the commissioners have any power or authority to fix upon another day. The general provision in the revised statutes, (1 *R. S.* 604, § 8,) does not apply to the first election, before there is any president or directors to fix upon and notify the election on a future day. The defendants in this case are not the trustees, and do not represent the interests of other persons to whom stock has been assigned. On the contrary, for aught I can legally know, they may have an interest adverse to that of the other stockholders. It would therefore be improper to grant an injunction which might eventually destroy the interests of those stockholders, without giving them a chance to be heard. This court unquestionably has the power to prevent this election, by an injunction operating upon the commissioners, restraining them from acting as inspectors of the election. And in a case of imperious necessity, where the complainant did not know and could not ascertain the names of the other stockholders, I might consider it my duty to prevent a great and irreparable injury to him, although the effect of that interference might be to destroy the charter of a corporation. But in the exercise of such a power, the court should require ample security from the complainant to pay all damages other persons might sustain, by the granting of the injunction, if it should be subsequently ascertained that it was not warranted by the real facts of the case. The oath of the complainant that he is informed and believes the existence of a fact, may be a sufficient ground to authorize the issuing of an injunction, against a defendant who has had an opportunity to deny the allegation if it is unfounded. But it is not sufficient to justify the court in destroying or injuring the rights of others, who have had no opportunity to be heard either by themselves or by those who are under a legal obligation to protect their rights.

In such a case, in addition to the usual allegation of the complainant, that he is informed and believes the fact, he should annex the affidavit of the person who knew that fact, from whom the information was derived. The complainant may honestly believe that some or all of these commissioners have been guilty of every thing which is charged against them in this bill, and yet he may have obtained his information from those who had no more actual knowledge on the subject than himself; or from one who has intentionally deceived him, for the purpose of depressing the stock of the company by this litigation, so that it might be obtained at a lower rate.

There is also another fatal objection to the granting of a preliminary injunction, in this case, which was not adverted to on the argument; which is, that there is no prayer for such process in the complainant's bill. A final injunction may be obtained upon the prayer for relief by injunction, or perhaps under the prayer for general relief. But to obtain a preliminary injunction, to restrain the defendants' proceedings pending the suit, there should be a formal prayer for such process, or some other prayer which is equivalent. Thus, in the case of *Wood* v. *Beadell*, (3 *Simon's Rep.* 273,) an injunction was asked for, as here, in the general prayer of the bill, but as there was no preliminary injunction asked for in the prayer of process, such injunction was refused. The complainant, however, was permitted to renew his application upon an amended bill.(a)

I am also inclined to think that the complainant has waived his right to question the correctness of the distribution of the stock, by voluntarily withdrawing from the hands of the commissioners the monies which were required to be paid on subscribing. On this point, however, I do not wish to be considered as having formed a definite opinion, as I have not had leisure to examine it fully. The opinion of Chancellor Sanford, in the case of the Commercial Bank of Albany, is not decisive, as in that case the complainant acquired an abso-

(a) See also *Savory* v. *Dyer*, *Amb. Rep.* 70; and *Davile* v. *Peacock*, *Barnad. Ch. Rep.* 27.

lute right to a portion of the stock, by his subscription ; and the corporation, when organized, could have recovered back the money, and have thus compelled him to take the shares of stock which belonged to him upon an equitable distribution. In that case, if the commissioners had any right to apportion the stock otherwise than by a mathematical calculation, or by a division upon the principles of exact equality, it was a power conferred upon them by implication of law, from the necessity of the case.    Such power could not, therefore, extend farther than was necessary to prevent the division of a share between two or more stockholders, by determining to which the whole share should belong.    In the present case, no absolute right vested in the complainant by his subscription ; and he might waive his claim to a portion of the stock, by receiving back his deposit, at any time before he became the legal owner of any part of such stock, by the apportionment of the commissioners.

It was not necessary in this case that the commissioners should give to each subscriber an equal, or any other amount of stock.    Where a distribution, or apportionment, is to be made between or among any number of persons, or a class of individuals, and no discretion is vested in those who are to execute the power of making the distribution, or apportionment, each individual of the whole number, or class of persons named, is entitled to an equal share.    But if the designation of a class or number of persons is made merely for the purpose of pointing out those from whom the selection is to be made, giving to the person entrusted with the power a discretionary right of distributing among that particular class as he shall think proper, then the whole may be allotted to one, or more of that class, to the exclusion of the others.    Formerly the question as to the right of the person entrusted with the power, to exclude any one of the class designated, by giving what was called an illusory portion, was frequently agitated in the courts, and produced much litigation.    But the revised statutes have forever put that question at rest in this state.    By the 98th and 99th sections of the article relative to powers, it is declared, that where a disposition under a pow-

er is directed to be made to, or among, or between several persons, without any specification of the share or sum to be allotted to each, all the persons designated shall be entitled to an equal portion.    But when the terms of the power import that the estate, or fund, is to be distributed between the persons so designated, *in such manner or proportions as the trustee of the power shall think proper*, the trustee may allot the whole to any one or more of such persons, in exclusion of the others. (1 *R. S.* 774, *and Revisors' Report on ch.* 1, *pt.* 2, *p.* 61.)[a]   Although the power in the present case was to be exercised by these commissioners as the officers or agents of the public, and not strictly in the character of mere trustees of a power in trust, yet, as the legislature had established this general principle as one of the fundamental rules of construction, in reference to powers, I must presume they meant the same rule of construction should be adopted in relation to the power granted to or conferred upon these commissioners.    The only restriction imposed upon them, therefore, was that they should exercise the power according to the best of their judgment, and apportion the stock to such of the subscribers and in such proportions as a majority of them should deem most advantageous to the interests of the corporation.    And there is no allegation in this bill from which I have a right to infer that the complainant believes they have not distributed the stock in this manner.    Although it is alleged that the complainant is informed, and believes, they have distributed the stock principally among themselves and their relatives and friends, it would only be in accordance with the principles of human nature, were we to conclude, from that circumstance alone, they honestly believed that they and their friends would be more likely to appoint directors who would manage the concerns of the corporation well, than others would if the control of the corporation should be given to their opponents. In this perhaps they may have acted under a mistake, but that alone is not sufficient to authorize an interference with their distribution.    Where a discretion is to be exercised according to certain fixed legal principles, especially

(a) As to personal estate, see 1 *R. S.* 773, § 2.

1833.

Walker
v.
Devereaux.

when that discretion is to be exercised by a person, or body, acting as a court of justice, if the person or body entrusted with the power has mistaken the law, or violated such fixed legal principles, it may be a proper case for review and correction by the appropriate tribunal. But if the legislature has entrusted the exercise of the power to the sole judgment and discretion of a particular person or body of individuals, no court is authorized to interfere with or control that discretion ; provided it is exercised in good faith. In the recent case of *The King ex rel. Scales* v. *The Mayor and Aldermen of London*, (3 *Barn. & Adolph. Rep.* 271,) the late Lord Tenterden says, " if a matter is left to the discretion of any individual, or body of men, who are to decide according to their own conscience and judgment, it would be absurd to say that any other tribunal is to inquire into the grounds and reasons on which they have decided, and whether they have exercised their discretion properly or not." The same principle is recognized in the case of *The King* v. *The Justices of Norfolk*, (1 *Nevile & Man. Rep.* 67,) and in a variety of cases in our own courts. This point was also expressly decided by the vice chancellor of the first circuit, in the case of *The Brooklyn Bank*, (1 *Edward's Ch. Rep.* 371,) where the powers of the commissioners were the same, substantially, as in the present case. Chancellor Sanford also admitted the correctness of this principle, in the case which was before him relative to the distribution of the stock in the Commercial Bank of Albany ; although he very properly decided that it was not applicable to the case then under consideration. (*Meades* v. *Walker*, 1 *Hopkins' Rep.* 591.) It is not necessary for the decision of the present motion that I should consider the question whether the commissioners could themselves become subscribers for the stock of the corporation. But as that question has been fully argued, it may save expense to the parties and prevent further litigation in this case, if I proceed to dispose of that objection to the distribution, at this time. The general principles, that a trustee cannot traffic in the subject of his trust, that no person shall be a judge in his own cause, and that a public officer cannot do an act which is inconsistent with the duty he owes to another, or to the public, are well understood. And it cer-

tainly does seem to be inconsistent with these principles, that
the legislature should, in any case, permit commissioners for the
distribution of stocks, to decide between themselves and others
what portion of such stocks shall belong to the commission-
ers, and what part they shall award to other subscribers.
It certainly would better accord with these leading principles
of law, were the legislature to state, in express terms, what
portion of the whole stock each commissioner should be per-
mitted to take ; and to prohibit him from taking, either direct-
ly or indirectly, any greater share, except in a case of deficien-
cy in the amount subscribed.  But where it was in the
power of the legislature to give all the stock to certain in-
dividuals, who had already become subscribers therefor, as was
the case in relation to many of the early acts creating joint
stock companies, the legislature might unquestionably con-
fer the power upon such individuals of deciding how much
of such stock they would keep themselves, and how much
they would apportion to others.  The question here is, wheth-
er the legislature, in the case now under consideration, expect-
ed or intended that these twenty-one commissioners, named in
the act of incorporation, should be permitted to subscribe for
and receive a part of the stock of this company.  The funda-
mental principle to be observed in the construction of statutes,
is to discover if possible the true intention of the lawgiver.
And when that intention is ascertained, the court is bound to
give effect to such intention, whatever opinion the judge may
entertain as to the wisdom or policy of the law ; provided such
intention does not contravene any principle of the constitu-
tion, or transcend the powers of the legislature.  Every thing
which is within the intent of the makers of the act, although
it be not within the letter, is as much within the act as if it
were within the letter and intent also.  (*Stowel* v. *Lord Zouch*,
1 *Plow. Rep.* 366.  *Dwarris on Stat.* 691.)  Statutes are also
to be construed in reference to the law as it existed, or was
supposed to exist, at the time of making of such statutes.
Thus, if certain expressions in a statute have a settled and
determinate meaning at the common law, or by a settled ju-
dicial construction of the same words in a former statute, the
court is bound to presume the legislature intended they should

have a similar meaning, or receive the like construction in the new statute. And as one part of a statute is to be referred to for the purpose of ascertaining the meaning of another part, so may other laws, made by the same legislature or upon the same or similar subjects, be referred to for the same purpose. It is therefore proper to refer to the provisions of the several acts authorizing commissioners, and others, to receive subscriptions for and to distribute the stock of monied and other corporations, and to the known usage under such statutes, for the purpose of ascertaining whether the legislature intended that the commissioners in this case should be excluded from subscribing or receiving any portion of the stock, on account of the peculiar nature of their official duties in the distribution of the stock in case of an excess. The case of *Haight and others* v. *Day and others*, (1 *John. Ch. Rep.* 18,) came before this court, in 1814, upon a complaint against the commissioners for the distribution of the stock in the Cattskill Bank, under a provision in the act of incorporation very similar to that which is now under consideration. The complaint in that case was, that there was a gross inequality in the apportionment among the subscribers; and that the distribution was principally confined to the commissioners themselves, their relations and favorites. The bill also charged that the apportionment was unjust, fraudulent and corrupt. Yet, upon the answer of the defendants merely denying that they were governed by any improper motive in the execution of their trust, and alleging that they had apportioned the stock as they deemed discreet and proper, Chancellor Kent dissolved the injunction and permitted them to proceed, and to elect themselves directors to control and manage the institution.

It is suggested by the complainant's counsel that it does not appear by the report of that case that the objection was there raised, that it was inconsistent with their character as commissioners to distribute the stock—to subscribe for and apportion a part thereof to themselves. It appears to me, however, impossible to suppose the chancellor could have overlooked this general principle, if he had considered it as applicable to the case; for, upon looking into the pleadings in that cause, on file in the register's office, a more appropriate case for the

enforcement of that principle can hardly be conceived. The whole stock to be distributed was 6000 shares; and more than six times that amount was actually subscribed, by one hundred and twenty-three persons, including the twenty-two complainants who subscribed between five and six thousand shares. Yet the four commissioners took about one half of the stock to themselves, and gave all of the residue, except 108 shares, to nine of their nearest relatives by blood and marriage, and to two or three other persons connected with them in business. And they distributed the 108 shares among the complainants and others, by giving one share to each. In a case so glaring, I cannot believe my learned and now venerable predecessor would have forgotton or have hesitated to apply this principle, if he had not been satisfied from the course of legislation which had been adopted in relation to the distribution of the stocks of incorporated companies, that there was something which took the case of commissioners and trustees for the distribution of such stocks, out of the operation of the general rule. Whether he was right in his construction of the law as to the powers of the commissioners in such a case, it is useless now to inquire, as his decision has been received and acted on as law ever since that time. And the numerous prohibitions contained in subsequent acts of incorporation, restricting the commissioners as to the number of shares they shall be permitted to distribute to themselves, but without giving them in terms the power to take any, show the understanding of the legislature that such was the established law. I must therefore conclude, from these circumstances, and also from the fact, of public notoriety, that commissioners have always been in the habit of apportioning a part of the stock to themselves, that the legislature did not intend the commissioners in this case should be excluded from a participation in the stock of the company. As to the amount taken by them, they have restricted themselves far below the smallest maximum which has ever been adopted by the legislature in a similar case. I cannot, therefore, say they have abused the right of appropriating a portion of the capital stock of the company to themselves. Indeed, when we consider that the statute has made no provision for compensating them for their

services, and that they must necessarily encounter the risk of the expenses of litigation with those who might honestly suppose their rights had been violated in the distribution of the stock, I can hardly believe the profits on a hundred shares will afford an adequate indemnity to any one of these commissioners; considering them as having some claim to a portion of the stock, independent of their services and responsibilities as commissioners.

As the law had entrusted the commissioners with a discretionary power, to apportion the stock in such manner as should be deemed by them most beneficial to the interests of the corporation, it would undoubtedly be a fraud upon the commissioners, and upon the law, for an individual to subscribe for stock in his own name, under a secret agreement or understanding with another that the stock which might be apportioned to him should be held in trust for the benefit of the latter; provided it was done for the purpose of deceiving the commissioners, and thus inducing them indirectly to give to a person stock, when they would not have considered it for the interest of the corporation to have apportioned the stock to such nominal subscriber, if they had known he was to hold the same in trust for another person. In such a case, however, as the trust would be illegal, and not authorized by the laws of the land, as between the parties to such fraudulent arrangement, the legal title to the stock awarded to such nominal subscriber would be vested in him. If such stock, therefore, could be reached by a suit in this court, for the benefit of all or any of the real subscribers, it would be necessary for that purpose to proceed against the person in whom the legal title to the stock was vested. It would be equally a fraud upon the law and upon the other commissioners, if one of their number should subscribe for stock in the name of another person, and conceal that fact from his co-commissioners, for the purpose of obtaining indirectly more stock than the majority of the commissioners would have thought proper to have awarded to him, had they been informed he was to be the beneficial owner of the stock thus subscribed for in the name of another. On the contrary, as the statute in this case had imposed no limitation whatever upon the amount which any

1833.

Walker
v.
Devereaux.

individual subscriber should be permitted to receive, provided a majority of the commissioners honestly believed it was for the interest of the corporation that he should have the same in preference to others, and inasmuch as it had not prohibited one person from subscribing for the stock, indirectly, in the name of another, it could be no fraud upon the law or upon the commissioners to subscribe in that manner, provided the commissioners actually knew for whose benefit the subscription was made, previous to the apportionment of the stock. The fraud in such cases does not consist in subscribing for stock in the name of another person, but in concealing the knowledge of that fact from those whose duty it is to distribute the stock as they shall deem most beneficial to the interest of the corporation, having a regard to the situation of those who are to be the real owners of the stock apportioned to the nominal subscribers. As it is a general principle that no wrong should be permitted to exist without a remedy, I am inclined to think a fraud of this kind may be reached. But whether it should be by a bill filed by one of the subscribers, in behalf of himself and all others standing in a similar situation, to have the stock thus fraudulently obtained restored to the control of a majority of the commissioners, to be distributed by them in conformity to the principles of the statute; or by a bill in the name of those commissioners who were not parties to the fraud; or by an information in the name of the attorney general, as the protector of the rights of the public; are questions which cannot arise in this cause, and which I am not prepared to decide without argument. It is alleged in this case that *some* or *one* of the commissioners subscribed for stock in the name of another person. But it is not stated who those commissioners were, and it is not alleged that the knowledge of the fact was concealed from the other commissioners; neither is the person, in whom the legal title to the stock is vested, made a party to the suit. This part of the bill is manifestly defective; as the complainant is not permitted, by any rule of pleading, to charge some one or more of a larger number of individuals with a fraud, or with any other violation of the rights of the complainant, and then to call upon

each one of the whole number to disclose whether he is the person, who has been guilty of the fraud or injury charged.

The complainant's supposition that certain portions of the stock were set apart as a separate fund for state officers, and editors, and was distributed to them without reference to the fact that they were subscribers for the stock, is contradicted by the affidavit of Mr. Townsend, the chairman of the board, who swears that the whole capital stock was apportioned to 1423 persons who were subscribers for the same.

As the complainant's bill is defective, both in form and substance, and states no sufficient grounds to authorize the interference of this court with the distribution of the stock, as made by the commissioners, the application for an injunction must be denied, with costs.