## CROCKER & WILLIAMS vs. CRANE.

Where an act of incorporation of a rail road company, appoints *a certain number of commissioners* to open books to *receive subscriptions* to the capital stock of the corporation, and to *distribute the stock* among the several subscribers in such manner as they shall deem most conducive to the interests of the corporation, making no provision that a *majority* shall constitute a quorum for the discharge of the duties entrusted to them, *all must be present to hear and consult* when they come to *distribute the stock*, although a *majority* are competent to decide. In the *distribution of the stock* they act *judicially ;* not so as to *receiving subscriptions*, in respect to which they act only *ministerially*, and it is not necessary for that purpose that even a *majority* should be present.

The *commissioners* are not authorized in such case to receive the *checks* of the subscribers in payment of the sum required to be paid at the time of subscription ; *specie* or its equivalent *current bills of specie-paying banks* must be demanded. Whether payments in *checks* are a compliance with the statute, is a question of *law*, and not of *fact* to be submitted to a jury.

A *distribution* of stock by commissioners, not sufficient in number to consti-

tute a legal board, is *coram non judice* and void ; and a check, note or other instrument, given for the payment of the first instalment of stock subscribed for, is void for the want of consideration.

A *fraud* practiced by one of the commissioners upon his co-commissioners, and upon a portion of the subscribers in the distribution of the stock, cannot be set up by a *subscriber* to vitiate the proceedings of the commissioners, the subscriber *quoad* the proceedings, is deemed a *party* to the adjudication ; *strangers* may impeach a covinous judgment, but not *parties*.

Where a statute declares that " A. B. and C. and *such other persons as shall hereafter become stockholders of said company*, are hereby constituted a body corporate and politic by the name of, &c." no corporation exists if there be no stock distributed : the distribution of the stock, is a *condition precedent* to the existence of the corporation.

In the construction of a statute, if the *meaning* of the legislature be manifest, the intention will be carried into effect, although apt words are not used in the act.

THIS was an action of *assumpsit*, tried at the Chautauque circuit in July, 1837, before the Hon. ADDISON GARDINER, then one of the circuit judges.

The suit was brought on a check drawn by the defendant, in July, 1836, on the Commercial Bank of Buffalo, for $2002, payable to the order of John Z. Saxton, and *endorsed* by him and five other persons. On the trial of the cause a certificate of a *notary* was produced, stating, that on 12th October, 1836, the check was presented at the bank for payment, payment refused, and notice of non-payment sent by mail to the drawer and endorsers at *Fredonia*. On this proof the plaintiffs rested. A nonsuit was moved for on the grounds : 1. Of a variance between the check produced, it having *six* endorsers, and the check described in the plaintiffs *bill of particulars* it having but *one* endorser ; 2. That it did not appear that the drawer or endorsers of the check resided at *Fredonia ;* 3. That the check was not presented in due time, three months having elapsed, &c. The nonsuit was denied. The defendant then entered upon his defence, and produced testimony in support of the facts set forth in *the notice attached to his plea*, in which he stated in substance, that he would prove on the trial of the cause, that the check in question was given by him on his subscribing for 143 shares of stock of the *Buffalo and Erie Rail Road Company*, the shares being $50 each, and the act incorporating the company requiring the payment of

*two dollars* on each share at the time of subscription, and that the check in question was accordingly given and received in payment; that at the time the commissioners well knew that the defendant had not any funds in bank, that it was understood that the check was received wholly on the credit of the drawer and endorsers, and that it should not be presented for payment until after the expiration of thirty days; that some of the commissioners appointed to receive subscriptions for and make distribution of stock, acted *fraudulently* in the premises whereby the whole proceeding became a nullity; that *four* of the individuals appointed *commissioners* by the act of incorporation, did not attend and were not present at the receiving of subscriptions for stock, or in the distribution of stock; and that the check in question was put in circulation contrary to the expressed directions of a majority of the commissioners who received the same, and came to the possession of the plaintiffs with full knowledge of the above facts and circumstances. The evidence in relation to the *worthlessness* of his check produced by the defendant was this: the commissioners had received from some of the subscribers *uncurrent bills*, and although one of their number offered to take such bills and give *current funds* therefor in 30 days, the commissioners preferred to take the checks of subscribers, provided they were well endorsed. Three of the commissioners testified that it was understood at the time, that the drawers had no funds in the banks on which they drew; but it also appeared that one of the inducements for accepting the checks, was that the money would not probably be wanted soon, and that the checks would not immediately be presented. The evidence in relation to the *fraud* was this: There were two routes contemplated for the road, one by the way of *Fredonia*, and the other by way of *Dunkirk*. A person residing at Dunkirk desirous that the road should pass through that place, deposited with one of the commissioners a large sum of money, and requested him to procure subscribers for stock for his benefit, and to make the required deposit on the stock being subscribed for. The commissioner procured subscribers, and paid out about $6000 on

their subscriptions. The principal in this transaction also subscribed for stock in his own name. On the distribution of the stock, none was allowed to him, a majority of the commissioners in the exercise of their discretion intending to give a majority of the stock to the subscribers who were in favor of the *Fredonia route.* The commissioner who had procured subscribers as above, advocated the giving of stock to the subscribers in favor of the *Dunkirk route ;* his colleagues were ignorant that he had acted as the agent of another in procuring subscribers, and in the *finale* of the matter, it turned out that the subscribers who preferred the *Dunkirk route* had obtained a majority of the stock, and of course had the control of the affairs of the company. When the result was known a majority of the commissioners protested, and directed one of the commissioners who had charge of the checks which had been received, not to put them into circulation ; but it seems that *directors* of the company were subsequently appointed, and that the check in question got into circulation. It was admitted by the plaintiffs that they received it for a pre-existing debt, and held it subject to the same equities which might be objected against the recovery of its amount, had the suit been brought in the name of the rail road company. It was proved that the making of the road *was not commenced* on the 29th day of July, 1836.

The counsel for the defendant requested the judge to charge the jury : 1. That an act of the legislature enacted 7th May, 1836, entitled " An act to amend the act entitled An act to incorporate the Buffalo and Erie Rail Road Company passed April 14, 1832," by the first section of which *the time for commencing the road,* is extended to 14th April, 1838, did not *revive* the act of 1832 which expressly declared, that if the corporation did not within four years from the passage of that act *commence* the road, it should thenceforth forever cease and the act be null and void ; and consequently there being no act authorizing the organization of the company, the check was void for want of consideration. To which the judge answered that the act of 1836 was a *continuation* of the act of 1832, and authorized the organization of the company.

2. The judge was requested to charge, that as, in and by the act incorporating the company and the act amending the same, *seventeen* persons are nominated and appointed *commissioners* to receive subscriptions and distribute the stock; and, as by the proof, it was shown that *four* of those persons did not appear or take any part in the matter, that the acts of any number of the commissioners *less than the whole* were *void*, and conferred no rights upon the subscribers to the stock of the company. To which the judge answered, that the commissioners were *ministerial officers*, and as the discharge of their duties did not involve the exercise of *judicial powers*, strictly so called, although they exercised a discretion as to the *amount* and the *persons* to whom the stock should be distributed, a *majority* could act, and a concurrence of *all* the commissioners was not necessary.

3. The judge was requested to charge that the commissioners, having received *uncurrent money* from some, and *checks* from other subscribers for the stock of the company, had not complied with the requirement of the fourth section of the act of 1832, incorporating the company, which declares that "the commissioners shall receive no subscriptions, unless two dollars on each share subscribed be paid at the time of subscription;" and consequently, the check in question having been received in violation of the statute, it was void, and the defendant acquired no right to any of the stock of the company. To which the judge answered, that this was a question of fact for the jury; that if they were satisfied that the checks were received in the ordinary course of business as a cash payment, without an agreement to give credit to the subscribers, it would be sufficient payment, within the terms of the statute.

4. The judge was requested to charge, that the conduct of the commissioner, in procuring subscribers to promote the views of the person who deposited money with him, and his subsequent acts in furtherance of the same object, rendered the whole proceedings void, and rescinded the contract of the defendant. To which the judge answered, that although the conduct of the commissioner might render

him personally responsible, and affect the title of those for whom he obtained stock, still it did not invalidate the acts of the other commissioners who, for aught that appeared, acted with entire good faith; that it was the intention of the commissioners that the defendant should receive the full amount of his subscription, and the stock was awarded to him accordingly; that he had received and voted upon it, and could not allege in defence to this action that *others* were defrauded, or that he would have realized a greater advantage by a distribution to other persons than those for whom the commissioner, whose conduct was complained of, was interested.

The jury, under the decisions thus made, found a verdict for the plaintiffs for $2107 11. The defendant having tendered a *bill of exceptions*, which was duly signed, moved for a new trial. The cause was argued by

*A. Taber & S. Stevens*, for the defendant.

*M. T. Reynolds*, for the plaintiffs.

*Points made and argued on the part of the defendant :*

I. The plaintiffs should have been nonsuited : 1. For the *variance* between the *bill of particulars* and the proof in respect to the number of endorsers; and 2. For want of evidence that the notice of protest was sent to the *place of residence* of the defendant.

II. The act of 1832, by its own terms, became *void*, in consequence of the construction of the road not being commenced *within four years*. The act of 1836 does not profess to *revive* it, and therefore it was not revived; consequently, the whole transaction of *July*, 1836, was without legal authority, and void.

III. The *subscription* and *distribution* of the stock was void, because *all* the commissioners did not unite in doing the acts, which were done When power is conferred by statute upon *several*, all must meet, though a *majority* may decide.

Crooker v. Crane.

IV. The check in question was void : 1. It was taken by color of law, but without authority; and 2. There was no party *payee* who could legally receive it.

V. The check was void, also, because taken *in lieu of money* in direct violation of the statute. It gave no right to the stock, and was wholly without consideration.

VI. The *fraud* practiced by *one* of the commissioners upon his co-commissioners and upon the subscribers, authorized the defendant to rescind his subscription.

VII. The turning out of the check to the plaintiffs in payment of the *private debt* of James Van Buren, (probably one of the directors,) was such a gross misapplication as will prevent a recovery by the plaintiffs.

*By the Court*, Cowen, J. The first subdivision of the plaintiff's first point does not arise. The declaration and bill of particulars delivered with it are not set out in the bill of exceptions, so that we can judge whether there was a variance, or not, from the check given in evidence.

As to the second subdivision of the first point, the notary's certificate is not set forth. *Non constat*, but it was well on its face, and sufficient to prove notice. If the objection mean that independent proof should have been given that the notice was properly directed, that is a mistake. The certificate is, *per se, prima facie* sufficient evidence that it was properly directed. 2 R. S. 212, § 46, 2d ed.

The second point of the defendant is not well taken. The act of 1836 does not say in terms that the first act shall be revived; but it does the same thing by implication. The first act had expired by its own provision, because the road had not been commenced within four years. The last act declares that the time shall be extended, and then professes to amend the former act, and repeal parts of it. The meaning of the legislature is perfectly plain; and apt words are not essential. Dwarris on Statutes, 702, 3.

As to the defendant's *third* and *fourth* points, the receiving of subscriptions was not a *ministerial* act. Any one had a right to subscribe and pay in the four per cent. Such an act might be allowed by an agent or deputy appointed by

the commissioners, or by one, without authority at the time; the acts being afterwards ratified by the board. But the question is different as to the *distribution of stock*. The fourth section provides, that "if more than $650,000 shall have been subscribed, they (the commissioners) shall distribute the said stock among the several subscribers, in such manner as they shall deem most conducive to the interests of the said corporation." Statutes, Sess. of 1832, p. 191. Here, it appears to me, is a *judicial power* vested in the commissioners; a power to exercise a discretion founded on such considerations as may appear to them beneficial to the company's interests. These may be various and important, while the decision is, in its nature, beyond the reach of appeal. *Walker* v. *Devereaux*, 4 Paige, 229. And see *The People ex rel. Case* v. *Collins*, 19 Wendell, 56, 60, &c. Then it has long been perfectly well settled that, where a statute constitutes a board of commissioners or other officers to decide any matter, but makes no provision that a *majority* shall constitute a quorum, all must be present to hear and consult, though a majority may then decide. *Ex parte Rogers*, 7 Cowen, 526, 529, 530, and the cases there cited, and see note (*a*). The statute, 2 R. S. 458, § 27, 2d ed. was passed in affirmance of this rule, which it adopts in terms. The rule has been applied to ordinary commissioners of highways, *Babcock* v. *Lamb*, 1 Cowen, 238, and a statute was thought necessary to qualify the rule in this case, which has been done slightly, by 1 R. S. 520, § 129, 2d ed.

The statute in question, § 1, provides that Heman M'Clure, Benjamin Walworth, John Crane and such other persons as shall become stockholders shall constitute the corporation, and if no stock was distributed, there is no corporation. The objection that there was no party payee who could legally receive the check, is unfounded in fact. *Saxton* was a competent payee. But the awarding and distributing of the stock by the proper authority was a condition precedent to the existence of the corporation. This is the view taken by the present chancellor in *Walker* v. *Devereaux*, 4 Paige, 229, upon a statute with similar provisions as to the mode of organization, under which the *Utica &*

*Schenectady rail road company* was constituted, and which view I am satisfied is perfectly sound. The distribution being conducted throughout by a number of commissioners not sufficient to constitute a legal board, was *coram non judice,* and void. It follows that there never was any corporation. The defendant got no stock, and all consideration for the check has failed. See also the reasoning of Lansing, Chancellor, in *Jenkins* v. *Union Turnpike Co.,* 1 Caines' Cas. in Err. 94, 5.

With regard to the *fifth* point, the commissioners, in a matter wherein they had a right to act, received *uncurrent money* and *endorsed checks,* instead of *cash* for the per centage, required by the act to be paid at the time of the subscription. I can not collect from the evidence that they made any serious stand on the condition that cash should be paid. By cash I mean specie, or its equivalent in current bills of specie paying banks. They received uncurrent money for a while, and at last resolved to receive checks, lending an easy ear to the presumption urged upon them, that a drawer of a check had current funds in place. I can not feel a doubt on reading the evidence that the whole was a mere evasion of the statute. In that I certainly differ from the jury to whom the question was left. It ought not to have been left to a jury, whether knowingly paying and receiving uncurrent money was a compliance with the mandate of the legislature. At what discount the money stood does not appear. It must I think have been wretchedly worthless, to have been uncurrent amid the inflations of 1836. The checks were received mainly because they were preferred to this uncurrent money. There was some question started whether the drawers had funds, those very drawers too who had, it seems, nothing but uncurrent money to pay. A good endorser was required ; but looking at the whole transaction, this was evidently a substitution of individual credit for cash payment. Giving time of payment was talked of, inasmuch as the money would not be wanted for immediate use. I think the jury fell into a plain mistake when, under the charge of the judge, they pronounced this the ordinary course of receiving checks, to

effectuate a cash payment. Why are they taken as cash in the ordinary course of business? Because they are a mere transfer of money which a man has at his banker's. I do not deny that receiving an occasional check might have been a fair substitute. But checks being crowded on the commissioners in a mass, because no subscriber had any thing but uncurrent money to pay, is another matter. The commissioners might as well have received any thing else which an accommodating construction would call an equivalent for cash. But the statute did not allow a mere equivalent. It would not, for instance, have recognized a mortgage or stocks as a payment, of whatever value. The commissioners were here acting *ministerially*, and if they have not pursued the purposes of the statute, their acts can not be sustained.

I am therefore strongly inclined to the opinion that the check in question was void, as contrary to the policy of the statute. Nor can there be any doubt, I imagine, that the contemplated corporation, if I am right as to the facts, failed of going into existence, for want of the proper payments as a *condition precedent*. Such is the doctrine laid down by Chancellor Lansing in *Jenkins* v. *Union Turnpike Co.*, 1 Caines' Cas. in Err. 94, 5, and recognized by this court in *Goshen Turnpike Co.* v. *Hurtin*, 9 Johns. R. 217 : and see *Highland T. P. Co.* v. *McKean*, 11 Johns. R. 98, and *Dutchess Cotton Manufactory* v. *Davis*, 14 Johns. R. 238. These cases go farther. Each subscriber must pay as a condition to his own liability attaching. Payment was a requisite which the commissioners could not waive. *Starr* v. *Scott*, 8 Conn. R. 483.

As to the *sixth* point: the *fraud* practiced by one of the commissioners was, I think, properly treated by the judge as not vitiating the whole proceeding, if it had been otherwise regular. He deceived his co-commissioners, who took it upon them to distribute the stock. In this they acted *judicially :* and had they been a quorum, their judgment would have been binding, notwithstanding the fraud. A judgment is sometimes void where it is got up collusively, and with a view to cheat a third person, who has no chance of being

Crooker v. Crane.

heard. It is then void in respect to that person, who may impeach it in a collateral suit. But it is never holden void as to a party who has legal notice and may be heard to contest it, even though the judges and party complaining may be defrauded either in respect to the form of proceeding or the merits. The party injured being before the court, must take his remedy there in the course of the suit. That a stranger may impeach a covinous or collusive judgment, see *The Duchess of Kingston's case, passim*, 11 St. Tr. 198, Hargr. ed. and especially p. 262. But that a party or privy shall not, see 1 Phil. Ev. 7th Lond. ed. 346; *Peck* v. *Woodbridge*, 3 Day, 30; and note (c) to *Doe, dem. Day* v. *Haddon*, 3 Dougl. 312, 313. Where, in a proceeding like that now in question, a quorum of commissioners assemble and the payments are regularly made, the board acquire jurisdiction, and the subscribers are to be considered as parties to the adjudication by which the stock is distributed.

The objection that the check was misapplied, being turned out by Van Buren, may be true; but it would not vitiate it, if it was valid in its concoction, or if it became valid by the due organization of the company. In such an event, it could not be material to the defendant in what name the collection was enforced. He would obtain his stock and pay the stipulated compensation; and the directors would be accountable for the amount of the check, at least Van Buren would be, if, as suggested, he was one of them. The point, however, does not appear to have been raised at the trial.

But as the corporation do not appear to have been organized, there having been no *quorum* to distribute the stock; and as the receiving of the uncurrent money and checks was in fraud of the statute, the check in question is void, both as wanting a consideration, and as an act which violated the policy of the law.

New trial granted; costs to abide the event.