# CARLISLE v. THE CAHAWBA AND MARION RAIL ROAD COMPANY.

1. When a matter alledged in the pleading is to be considered as lying more properly in the knowledge of the plaintiff than the defendant, then the declaration ought to state that the defendant had notice; but it is otherwise where both parties are supposed to be alike cognizant of the fact.

2. In an action against a stockholder for instalments required to be paid upon his shares, it should be alledged by the company that the defendant had notice of the requisitions; but a general averment in the declaration, in these words, " of all which the defendant had notice," is sufficient on general demurrer.

3. Although the charter of a Rail Road Company authorizes a sale of the stock of a subscriber for the non-payment of calls made thereon, yet an action of *assumpsit* will lie upon his subscription, which is a promise to pay.

4. Where a legislative act does not *per se* confer corporate powers, but contemplates some act to be done by the company, as the election of officers, &c., the act required must be done, to entitle the corporation to maintain an action against a subscriber for stock—the subscription being made prior to the time of the organization for which the charter provided.

Carlisle v. The Cahawba and Marion Rail Road Company.

WRIT of Error to the Circuit Court of Perry.

This was an action of *assumpsit*, brought by the defendant in error to recover of the plaintiff seven instalments of five per cent. each, on five hundred dollars in stock subscribed for in the Rail Road of the Company. The declaration contains three counts, the character of which will sufficietly appear from the opinion of the Court. A demurrer was filed to the entire declaration, which was overruled, and thereupon the defendant pleaded—1. *Nul tiel corporation.* 2. *Non assumpsit.* On both of which issue was joined and the cause submitted to a jury.

On the trial the defendant excepted to the ruling of the presiding Judge. The plaintiff offered in evidence an act of the Legislature of this State entitled " an act to incorporate the Cahawba and Marion Rail Road Company," approved January 18th, 1834; and further produced a written agreement, as follows: " We whose names are here underwritten, promise and oblige ourselves to pay at such times, or in such instalments, and in such manner as the President and Directors of the Cahawba and Marion Rail Road Company may from time to time prescribe and direct, the amount or number of shares of stock in the said company which we have set down opposite our respective names." The agreement was dated 20th March, 1837, and among many others the name of the defendant was thereto subscribed, opposite to which was the following: " $5, (five ss,) $500 dolls."

It was also shown from the books of the Company that the several instalments or assessments sued for, were made as stated in the declaration; but no proof was adduced of any demand of, or notice thereof, to the defendant previous to the commencement of this suit. Here the plaintiff closed its testimony, and the defendant offered none.

The defendant's counsel moved the Court to charge the jury, that in addition to the production of the charter and the written agreement, the plaintiff should have proved its regular organization according to the act. *And further* that the plaintiff should have proved a notice or demand of the several instalments sued for before the issuance of the writ. *And lastly,* the defendant moved to exclude from the jury the written agree-

ment because it was incorrectly described in the declaration. All of which several motions were overruled, and the Court instructed the jury that no other proof of the corporate character of the plaintiff was necessary but the production of the charter and the written agreement; and no proof of notice or demand of the several instalments sued for, was necescary to entitle the plaintiff to recover; and further, the agreement was admissible evidence under the declaration.

A. GRAHAM, for the plaintiff in error.   The demurrer to the declaration should have been sustained, because it does not alledge that the defendant had notice before suit brought, that the several instalments or assessments had been called for by the company; and the same remark will apply to the refusal to instruct the jury on this point.   [1 Chit. Plead. 360.]   The 4th section of the charter would seem to render a demand necessary before suit brought; and this would seem to be more especially necessary, when it is recollected that the written agreement does not bind the defendant to pay the stock subscribed by him to any particular person.   Besides the defendant, according to the terms of the charter, was not a corporator at the time he signed the agreement—the first section of the act making such only, those persons whose names are mentioned, together with their associates.

The written agreement was not described according to its legal effect, and should have been excluded under the *general issue*.

*Lastly;* the act of incorporation and agreement were not in themselves evidence that the plaintiff had become organized as a corporate body, and until this is done they have no right to require instalments to be paid on stock.   [See §4 of charter, passed in January, '34.]   The agreement does not admit the organization of the corporation; and there can be no pretence for saying that the defendant is estopped by his signature from requiring additional proof of its corporate powers.   He cited 13 John. Rep. 38; 18 ib. 137; Chitty on bills, 159; 8 Wend. Rep. 480; 1 Ala. Rep. N. S. 241.

H. DAVIS and B. F. PORTER, for defendant.   The charter creates a corporation, without requiring any further act in order

Carlisle v. The Cahawba and Marion Rail Road Company.

to authorize it to demand or sue for stock subscribed to the rail road. If the charter required other acts to be done in order to confer corporate powers, it is admitted that the performance of these acts should be replied and proved in answer to the plea of *nul tiel corporation.* [18 John. Rep. 137; 9 Cow. Rep. 204, *et post.*]

The agreement sued on admits the corporate existence of the plaintiff below. [14 John. Rep. 238.] · But if this be not so, the act of incorporation was quite sufficient. [2 N. Hamp. Rep. 310; 18 John. Rep. 137; 9 Con. Rep. 203.]

· The terms on which defendant made his subscription did not contemplate a notice, and no personal demand was necessary. Besides, the agreement made the President and Directors agents of the defendant and a notice to them, was a notice to him. [Ang. and Ames on Corp. 204.]. Further, the defendant is a corporator, and must take notice of the acts of the President and Directors, and may, if he will, be informed of them. [1 Chit. Plead. 360; Arch. Plead. 91; 1 Sand. Rep. 117, note 2.]

The agreement is in legal effect a promissory note, and the second count is good, [14 John. Rep. 238; 9 ib. 217,] though it does not alledge a demand or notice. If a note is payable on demand, the bringing a suit is a sufficient demand.

It sufficiently appears from the defendant's contract, that the payment for the stock is to be made to the plaintiff—but if the contract is incomplete in this respect, it is sufficiently aided by averments which are entirely allowable.

The subscription of the defendant for stock made him liable to the action of the plaintiff for the failure to pay for it. [Ang. and Ames on Corp. 304–5; 2 N. Hamp. Rep. 380; 1 Caine's Rep. 381; 5 Mass. Rep. 80; ib. 497; 10 ib. 327; 1 Binney's Rep. 70; 9 John. Rep. 217.]

COLLIER, C. J.—The first count of the declaration alledges that the plaintiff became a body corporate by an act of the legislature, approved on the 18th January, 1834, that the defendant, on the 20th March, 1837, with numerous other persons subscribed and executed a certain instrument in writing, whereby he promised to pay the plaintiff at such times, in such instalments and in such manner as the President and Directors of the corporation might prescribe and direct the amount or

number of shares of stock in the company which the defendant then and there set opposite his name. It is then averred that he set opposite his name five shares at one hundred dollars each, to be paid for according to the terms of the agreement. *Further*, that instalments were required to be paid on the stock subscribed, at different times and places, particularly stated, amounting in the aggregate to the sum of two hundred and fifty seven 50-100 dollars; of all which the defendant had notice. The Count then concludes with a deduction of the defendant's liability; his promise to pay, and an allegation of his non-payment.

The second count declares upon the agreement as a promissory note, alledges generally the repeated requisitions of the plaintiff on the defendant's stock, amounting in the aggregate to two hundred and fifty-seven 50-100 dollars, the non-payment of the instalments, but does not aver a demand or notice.

The third count is for stock sold and delievered, in consideration of which the defendant agreed to pay the plaintiff the sum of five hundred dollars.

The defendant did not demur to the counts separately, but objects to the declaration generally, that it is not explicitly averred that the defendant had notice *previous to the commencement of the suit*, that he was required by the President and Directors of the Company to pay any instalment upon the stock subscribed by him. True it is not alledged *in totidem verbis* that the defendant was *then* informed of the requisition which was made upon him, but the first count, after stating the different calls made upon the defendant for instalments, avers "of all which defendant had notice." This is *substantially* sufficient, conceding a demand, or notice, necessary to be averred and proved. If special demurrers were tolerated, perhaps greater particularity in pleading would be required, but matters of form are to be disregarded, as it is expressly declared by statute that all demurrers shall have no other effect than general demurrers.

In respect to the necessity of alledging and proving a notice, the rule is thus stated: when the matter alledged in the pleading is to be considered as lying more properly in the knowledge of the plaintiff than the defendant, then the declaration

ought to state that the defendant had notice thereof. But where the matter does not lie more properly in the knowledge of the plaintiff than the defendant, notice need not be averred. [1 Chitty's Plead. 360.] Testing the case by this rule, and we think it clear that notice of a call for instalments upon the stock is a necessary allegation. The times, amount of instalments, and manner of payment, were all to be prescribed by the President and Directors of the corporation, depended upon their volition and action; and consequently was more properly within their knowledge. It was competent for the defendant from time to time to have made inquiries of them and to have sought an examination of the books which they kept, yet he was under no greater obligation to have done this than is the drawer or indorser of a bill to inquire if it has been honored by the acceptor.

We will not undertake to say what evidence is necessary to charge the defendant with notice, or whether it may not be inferred from other facts, because there is nothing in the record to show that any proof was adduced to the point.

According to the view we have taken, the first count is good and this is enough to have authorized the Court to overrule the demurrer *in toto*, as it did not object to the counts separately.

The idea that the writing subscribed by the defendant is not correctly described, is not well founded. The first count, if it does not set it out literally, certainly describes it according to its substance and effect. Besides, although the Judge instructed the jury that the agreement was evidence, under the declation, it does not appear that its admissibility was objected to by the defendant at the trial.

The act incorporating the plaintiff provides that the President and twelve Directors designated by name, " and their associates and successors in office shall be a body politic and corporate by the name and style of the Cahawba and Marion Rail Road Company, with the usual powers. That the President and Directors shall continue in office until the first day of January, 1835, and until their successors are elected and qualified: and shall cause books to be opened, &c. for the subscription of stock, which stock, so subscribed, shall be divided into shares of one hundred dollars each." *Further*, the stockholders shall

meet at Cahawba, on the first day of January, 1835, and elect thirteen Directors from among themselves, one of whom shall be chosen President; and annually thereafter, there shall be an election of the same officers.  *Again:* " That the President and Directors, when they shall have organized agreeably to this act, shall have power to borrow money, contract debts, and be contracted with, upon the credit of the stock thereof, and to pledge personal or real estate for the payment of their debts, and to appoint such officers, agents and servants as they may think necessary, and give them such compensation as they may conceive just.   They may require such instalments to be paid upon the stock as they may think best for the interest of the said company; and on failure of any stockholder to pay the amount due upon his, her or their stock, in pursuance of any call made by the President and Directors, as aforesaid, within sixty days after such call, the President and Directors shall be authorized to sell said stock : *Provided,* the same can be sold at not less than par value, for the amount so due ; and the said stock shall be deemed and considered in law as private property."

In Beene v. the Cahawba and Marion Rail Road Company, [3 Ala. Rep. N. S. 660,] it was decided, that although the charter in question authorizes the sale of stock at its par value to pay what may be due thereon by the stockholder, yet upon an agreement, such as that sued on in the case before us, an action of *assumpsit* may be maintained.

It is needless to consider the character of the pleas, since it is clear they throw upon the plaintiff the *onus* of proving every thing necessary to sustain the action.

The defendant, by his subscription of stock, admits nothing more than the charter of the corporation asserts; and if that contemplates some further act to be done before a requisition may be made upon the subscribers for payments upon their stock, or before they are liable to suit, that act must be shown to have been done.   The fourth section, which we have cited *in extenso,* invests the President and Directors with authority to require such instalments to be paid upon the stock as they may think best for the interest of the said Company," ".when they shall have organized agreeably to this act."   What is meant by organizing is clearly pointed out, to wit : the assem-

bling of the stockholders and electing thirteen directors. To entitle the plaintiff to maintain an action against the defendant, and to recover the amount of calls made upon his stock, it should be shown that the meeting and election provided for by the charter did take place.

The powers of a corporation must always depend upon the terms and act of its creation. Some are made bodies politic, and entitled to exercise all powers conferred on them without any act done by its members, [10 Wend. Rep 269,] while it is necessary for others to prove their exisʇence, not only by the production of their charter, but acts of user, &c. must be shown. As to the *quantum* of proof required in such a case it is impossible to lay down a rule, applying alike to all cases ; it must depend upon the statute to which the particular corporation owes its being. [3 Wend. Rep. 296.]

In the case at bar, it cannot be supposed that the organization of the corporation is inferable from the fact of the defendant's subscription being made so long after the time when the stockholders were to have made their first election of Directors. The President and Directors appointed by the charter are expressly authorized to continue in office until their successors were elected and qualified, and in the absence of proof, it cannot be concluded that an election has been made.

It results, from a consideration of the questions raised, that the judgment must be reversed and the cause remanded.