SYRACUSE, PHŒNIX AND OSWEGO RAILROAD COMPANY V. GERE

*Corporation — railroad company — subscription to stock before organization — check given for subscription valid — corporation may maintain action on.*

Defendant subscribed for $1,000 stock in a proposed railroad company and gave his check for the ten per cent required by law to be paid in cash. The check was given upon an agreement by one A., at whose solicitation defendant subscribed and who took the check, that defendant should not pay the check or for the stock. *Held,* (1) that in the absence of authority from the directors of the proposed corporation to A. to make the agreement mentioned the check was a valid payment; (2) that authority in A. was not to be presumed, and (3) that the company, after incorporation, were entitled to maintain an action on the check against defendant.

APPEAL by defendant from a judgment in favor of plaintiff entered upon a decision of the court.

The action was brought by the Syracuse, Phœnix and Oswego Railroad Company against R. Nelson Gere, upon a check given by

defendant upon a subscription for stock in plaintiff. Sufficient facts appear in the opinion.

*Chamberlin & Knapp,* for appellant.

*Hiscock, Gifford & Doheny,* for respondent.

Present — MULLIN, P. J.; E. DARWIN SMITH and GILBERT, JJ.

MULLIN, P. J. The plaintiff sued the defendant on a check for $100, which was given for the ten per cent required by the general railroad law to be paid upon each share of stock of a railroad. company, at the time of subscribing therefor.

The defense is, that before the organization of the company Patrick H. Agan was engaged with others in procuring subscribers to plaintiff's stock, with the view of organizing a corporation under the general railroad law, to construct a road from Liverpool, in Onondaga county, to connect with the New York Midland, in Volney, Oswego county. Said Agan applied to plaintiff to subscribe, and as an inducement to do so he assured him he would not be called upon to pay any thing upon the subscription, and the defendant gave his check for the ten per cent required to be paid in cash upon a bank in which he notified Agan he kept no account, and that it would not be paid, and Agan agreed that it should not be presented. It was drawn upon that bank so that it should not be paid, if presented. The court gave judgment for the plaintiff and the defendant appeals.

There are but two questions of any importance occurring on this appeal. The first is whether taking the check for the ten per cent was such a violation of the statute as rendered it void. Second. Whether the plaintiff acquired such a title to the check as enables it to sue upon it.

First. Is the check void ?

The second section of the general railroad law (Laws 1850, chap. 140) provides that the articles of association shall not be filed and recorded in the office of the secretary of state until at least $1,000 of stock for every mile of railroad proposed to be made is subscribed thereto (that is, to the articles of association), and ten per cent paid thereon in good faith and in cash to the directors named in the articles of association.

In *Crocker* v. *Crane*, 21 Wend. 211, the question was whether the acceptance of checks in lieu of cash was a compliance with the provision of the charter, which in that case, as in this, called for a percentage to be paid in cash at the time of subscribing. It was held it was not. As in that case the commissioners for distributing the stock received checks or uncurrent money for the percentage of a large number, if not all, of the subscribers, the action of the commission was held to be void as contrary to the policy of the statute. COWEN, J., who delivered the opinion of the court, says (p. 220): "Why are they (checks) taken as cash in the ordinary course of business? Because they are a mere transfer of money which a man has at his banker's. I do not deny that receiving an occasional check might have been a fair substitute."

The assistant vice-chancellor, in *Thorp* v. *Woodhull*, 1 Sandf. Ch. 411, held that the receipt by the commissioners appointed to receive subscriptions for, and to distribute the stock of, an insurance company, of a check of a subscriber in payment of a percentage required by the charter to be paid in cash at the time of subscribing, was a proper exercise of power, and the drawer was liable on the check, and he considers the receipt of the check valid because it was received as cash. It did not appear that the commissioners had any knowledge or suspicion that the check was not good or that it would not be paid in due course. They received it at their own risk. It seems that the corporation took it from them as equivalent to cash, and it is not proved but that the commissioners and officers of the corporation believed it to be equivalent to money. He further says that "it does not appear that a check was taken from any other subscriber for stock."

The considerations that induced the vice-chancellor to hold the subscription valid in the case before him apply in all their force to the case before us. There is no evidence that a check was received from any other person than the defendant, nor that the directors had any knowledge of the understanding between Agan and defendant that the check should not be presented or paid, or that the cash to pay it was not in the bank to meet it when presented.

If the directors or the company were bound by the acts and agreement of Agan in the premises, the check must be held void, unless defendant is not in a situation to avail himself of the fraud which was committed or attempted to be committed upon the company or its stockholders. There is no proof of the authority given to Agan.

We must ascertain it therefore from the nature of his employment and the duties which it was probably intended he would perform.

The general railroad act contemplates that persons desiring to subscribe for stock shall meet together and agree upon and sign the articles of association, and subscribe for stock. The meeting is made up of persons invited by one or more persons friendly to the enterprise, with the view of inducing them to subscribe for stock and to become corporators in the company, and sometimes to take subscriptions to be presented to the directors when appointed. This is all the duty a person so employed, in the absence of instruction, clothing him with more enlarged power, is expected to perform, or it is necessary he should perform. Agan had no power to make the arrangement set up in the answer, and, if he made it, neither the directors nor the company were bound by it.

It is not to be assumed, in the absence of the clearest proof, that the subscribers to the stock, before the organization of the company, or the directors, after that event, would deliberately authorize the doing of an act that would destroy the subscription of any one or more of the subscribers and endanger the existence of the company after incorporation.

Second. Has the corporation a right to maintain an action on the check ? In other words, was the check ever legally transferred to the company? Although the statute contemplates and permits subscriptions to the stock of a railroad company before incorporation, yet these subscriptions do not bind the subscriber until the company becomes incorporate. When that event occurs, the subscriptions become the property of the corporation, and it alone can sue thereon. If it was competent to receive a check for the ten per cent required to be paid down at the time of subscribing, that check became the property of the company at the same time and in the same manner the company would have become owner of the money, had it been paid in lieu of the check. It does not matter, it seems, to whom the check was made payable. It was transferred to the company upon incorporation, just as land intended to be granted for the use of a religious society becomes the property of the corporation upon the incorporation becoming complete. The judgment must be affirmed.

*Judgment affirmed.*